IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| NITETEK LICENSING LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 21-790-MN |
| | ) |
| PARTICLE INDUSTRIES, INC., | ) |
| | ) |
| Defendant. | ) |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S RULE 12(b)(6) MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY PARTICLE INDUSTRIES, INC.**

OF COUNSEL:
Matthew S. Warren
Jennifer A. Kash
WARREN LEX LLP
2261 Market Street No. 606
San Francisco CA 94114
(415) 895-2940
21-790@cases.warrenlex.com

Karen E. Keller (No. 4489)
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
kkeller@shawkeller.com
arussell@shawkeller.com
*Attorneys for Defendant Particle Industries, Inc.*

Dated: August 23, 2021

# **TABLE OF CONTENTS**

Nature and Stage of the Proceedings. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

A.     The '783 Patent Claims Only the Abstract Idea of "Use a Bigger Number". . . . . . . . . . 2

      1.     The Patent Admits That CDMA Technology Was Well-Known, and Specifically Recites Several Well-Known Components. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      2.     The Claims Recite the Abstract Concept of Using a Bigger Number By Lengthening a Spreading Code Using Well-Known CDMA Components. . . . . . 3

B.     Nitetek's Infringement Allegations Confirm That the '783 Patent Claims Only the Abstract Idea of "Use a Bigger Number". . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     The Claims of the '783 Patent Are Not Patentable Subject Matter. . . . . . . . . . . . . . . . . . 5

      A.     The '783 Patent Claims Fail The First Prong of The *Alice* Test Because They Are Directed To An Abstract Idea. . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.     The '783 Patent Claims Fail The Second Prong of the Alice Test Because They Add Nothing Inventive To the Abstract Idea. . . . . . . . . . . . . . . . . 7

II.     All Claims of the '783 Patent Fail the *Alice* Test. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III.     This Court Can and Should Resolve This Motion at the Pleading Stage . . . . . . . . . . . . 9

IV.     The Court Should Not Grant Leave to Amend the Complaint. . . . . . . . . . . . . . . . . . . . 10

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

# **TABLE OF AUTHORITIES**

*Cases*

*Aatrix Software, Inc. v. Green Shades Software, Inc.*,
   882 F.3d 1121 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Alice Corp. Pty. v. CLS Bank Int'l*,
   573 U.S. 208 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 8, 9

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
   967 F.3d 1285 (Fed. Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Berkheimer v. HP Inc.*,
   881 F.3d 1360 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*BSG Tech LLC v. Buyseasons, Inc.*,
   899 F.3d 1281 (Fed. Cir. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*B# on Demand LLC v. Spotify Tech. S.A.*,
   484 F. Supp. 3d 188 (D. Del. 2020). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

*ChargePoint, Inc. v. Sema-Connect, Inc.*,
   920 F.3d 759 (Fed. Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Epic IP LLC v. Backblaze, Inc.*,
   351 F. Supp. 3d 733 (D. Del. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Fast 101 PTY Ltd. v. Citigroup Inc.*,
   424 F. Supp. 3d 385 (D. Del. 2020), *aff'd*, 834 F. App'x 591 (Fed. Cir. 2020) . . . . . . .  10

*Friedman v. Transamerica Corp.*,
   5 F.R.D. 115 (D. Del. 1946). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Internet Patents Corp. v. Active Network, Inc.*,
   790 F.3d 1343 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

*Inventor Holdings, LLC v. Gameloft, Inc.*,
   135 F. Supp. 3d 239 (D. Del. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*IPA Techs., Inc. v. Amazon.com, Inc.*,
   352 F. Supp. 3d 335 (D. Del. 2019). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Mayer v. Belichick*,
   605 F.3d 223 (3d Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.,*
    566 U.S. 66 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Natera, Inc. v. ArcherDX, Inc.,*
    No. 20-125, 2020 WL 6043929 (D. Del. Oct. 13, 2020). . . . . . . . . . . . . . . . . . . . . . . . .10

*Novo Transforma Techs., LLC v. Sprint Spectrum L.P.,*
    No. 14-612, 2015 WL 5156526 (D. Del. Sept. 2, 2015),
    *aff'd*, 669 F. App'x 555 (Fed. Cir. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Pebble Tide LLC v. Arlo Techs.*,
    No. 18-1767, 2020 WL 50918 (D. Del. Jan. 31, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Pivital IP LLC v. ActiveCampaign, LLC,*
    No. 19-1590, 2020 WL 6043919 (D. Del. Oct. 13, 2020) . . . . . . . . . . . . . . . . . . . . . . . 10

*RecogniCorp, LLC v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

*Sandbox Software, LLC v. 18Birdies, LLC,*
    No. 18-1649, 2019 WL 2524780 (D. Del. June 19, 2019) . . . . . . . . . . . . . . . . . 5, 7, 9, 10

*Secured Mail Sols. LLC v. Universal Wilde, Inc.,*
    873 F.3d 905 (Fed. Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*TecSec, Inc. v. Adobe Inc.*,
    978 F.3d 1278 (Fed. Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*TrackTime, LLC v. Amazon.com, Inc.,*
    No. 18-1518, 2019 WL 2524779 (D. Del. June 19, 2019). . . . . . . . . . . . . 5, 7, 8, 9, 10, 11

*TriPlay, Inc. v. WhatsApp Inc.*,
    No. 13-1703-LPS, 2018 WL 1479027 (D. Del. Mar. 27, 2018). . . . . . . . . . . . . . . . . . . 10

*Uniloc 2017 LLC v. Netflix, Inc.,*
    No. 18-2055, 2019 WL 3291581 (C.D. Cal. May 14, 2019) . . . . . . . . . . . . . . . . . . . . . . 8

*Yu v. Apple Inc.,*
    1 F.4th 1040 (Fed. Cir. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Zyrcuits IP LLC v. Acuity Brands, Inc.,*
    No. 20-1306, 2021 WL 3287801, at *6 (D. Del. Aug. 2, 2021) . . . . . . . . . . . . . . . . . . . 10

*Statutes*

Fed. R. Civ. P. 15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

35 U.S.C. § 101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

## NATURE AND STAGE OF THE PROCEEDINGS

On May 28, 2021, Plaintiff Nitetek Licensing LLC ("Nitetek") filed this action against Particle Industries, Inc. ("Particle"), claiming infringement of U.S. Patent No. 6,661,783.  D.I. 1 ("Complaint").  The parties agreed to extend Particle's time to respond to the complaint until July 30, 2021 (D.I. 7), and later until September 3, 2021 (D.I. 8); the Court granted their motions.  The parties have not filed any other motions in this matter.

## SUMMARY OF ARGUMENT

1. The '783 patent claims only the abstract idea of 'use a bigger number,' and is thus invalid under 35 U.S.C. § 101.  The claims include a series of generic, well-known components of CDMA transmissions, including the foundational spreading codes, adding only the concept of using "spreading codes of a longer length," that is, spreading codes using a bigger number.

2. The claims thus fail the two-step *Alice* test.  They provide no specific means or method that improves the relevant technology, but address only an abstract idea—'use a bigger number'—and invoke only generic processes and machinery to apply that idea to CDMA communications.  And they provide no inventive concept, but instead rely on well-understood, routine, and conventional activities previously known to the industry.  The claims thus fail both prongs of the *Alice* test, and address unpatentable subject matter.

3. Because the '783 claims are unpatentable as a matter of law, amendment would be futile.  The Court should therefore deny leave to amend, and dismiss this action with prejudice.

## STATEMENT OF FACTS

A.     **The '783 Patent Claims Only the Abstract Idea of "Use a Bigger Number"**

   1.     **The Patent Admits That CDMA Technology Was Well-Known, and Specifically Recites Several Well-Known Components**

On December 9, 2003, the Patent and Trademark Office issued U.S. Patent No. 6,661,783.  D.I. 1, Ex. 1 ("'783 patent").  The '783 patent concerns Code Division Multiple Access, or CDMA, "transmission apparatuses used for cellular systems such as digital car telephones and portable telephones."  *Id.* at 1:6-7.  In a lengthy "background of the invention" section, the specification acknowledges the long history of CDMA technology, as well as a long list of components that were well known before the patentee filed the patent.  *Id.* at 1:5 to 4:10.  As the specification explains, CDMA systems allow "portable telephones" to "carry out communications on a same frequency band simultaneously" through "spread spectrum communications in which an information signal is transmitted with its spectrum spread over a sufficiently wide band relative to the original information bandwidth."  *Id.* at 1:14-25.  To accomplish these "spread spectrum communications," a CDMA system "spreads the transmission signal" by "multiplying it by the assigned spreading code."  *Id.* at 2:40-43.  One well-known type of spreading code, the patent acknowledges, is "[h]ierarchic type orthogonal codes such as Walsh codes," which "are generated by combining generation matrices hierarchically as shown in Fig. 2, characterized by any two spreading codes in any hierarchy being mutually orthogonal."  *Id.* at 3:39-43; *see also id.* at Fig. 2.

The specification also defines "asymmetric communications" as "communications whose information rate is asymmetric between the uplink and downlink, for example when information is only sent from the mobile station side," and "symmetric communications" as "communications whose information rate is almost identical between the uplink and downlink,"

*id.* at 3:53-59, and acknowledges that both symmetric and asymmetric communications were part of well-known CDMA practices. *Id.* at 3:48-52.

Finally, the specification acknowledges that "power control" was a well-established component of CDMA transmissions. *See id.* at 1:39 to 3:7. Indeed, discussing the background of the invention, the patent states that it was "indispensable to control transmission power according to the state of each transmission path on the uplinks from mobile stations to a base station." *Id.* at 1:40-43. CDMA power control included "open loop" systems in which the base station broadcasts a constant "transmission signal" to the mobile station, which "controls the transmission power level using the overall power level measured by analog receiver 2 of the mobile station apparatus." *Id.* at 2:50-58. CDMA power control also included "closed loop" systems where, "if the level of the signal received from the above mobile station measured by reception level detection circuit 6 of the base station apparatus is lower than a predetermined reference level, the power control bit is determined so that the transmission level of the mobile station may be raised, and to the contrary if it is higher than the reference level, the power control bit is determined so that the level of the mobile station may be lowered, and these power control bits are transmitted to the mobile station." *Id.* at 2:59-67.

### 2. The Claims Recite the Abstract Concept of Using a Bigger Number By Lengthening a Spreading Code Using Well-Known CDMA Components

The claims recite a series of components that the specification has already acknowledged as well-known, adding only the concept of using a bigger number. Nitetek asserts claims 3 and 4, and they are representative. Claim 3 recites:

> A spreading code selection method, which selects as the spreading code for asymmetric communications, a hierarchic orthogonal type spreading code which is a spreading code of a hierarchy which contains spreading codes of a longer length than spreading codes used for symmetric communication lines and is orthogonal to spreading codes used for other asymmetric communication lines.

'783 patent at 9:26-32.  The specification acknowledges that each component recited—a "spreading code," "a hierarchic orthogonal type spreading code," and "symmetric" and "asymmetric communications"—were standard components of CDMA transmissions.  Claim 4 thus adds, if anything, a "method"—otherwise unspecified—that "selects" a code "of a longer length."  *See supra* § A.1; '783 patent at 9:26-32.  Similarly, claim 4 recites:

> A CDMA mobile communication method, when performing asymmetric communications, comprising:
>
> a base station apparatus spreading known reference signals and transmission power control bits by spreading codes with a length that is longer than spreading codes used for symmetric communications, and transmitting spreaded known reference signals and a spreaded transmission power control bits at a lower transmission rate than a transmission rate when symmetric communications are performed;
>
> a mobile station apparatus receiving said transmission power control bits;
>
> said mobile station apparatus determining transmission power based on said transmission power control bits.

'783 patent at 9:33-47.  Again, the specification acknowledges that "reference signals," "power control" and "power control bits," "spreading codes," and "symmetric communications" were all standard components of CDMA transmissions, making the only arguable addition of the claim "spreading codes with a length that is longer than spreading codes used for symmetric communications."  *See supra* § A.1; '783 patent at 9:33-47.

B.     **Nitetek's Infringement Allegations Confirm That the '783 Patent Claims Only the Abstract Idea of "Use a Bigger Number"**

Nitetek's allegations of infringement, attached to the complaint as Exhibit 2, confirm that the patent claims nothing more than using a bigger number.  D.I. 1, Ex. 2.  Nitetek claims that *all* CDMA transmissions infringe its patent, *id.* at 6-7, 16-17, but specifically references as infringing an "Orthogonal Variable Spreading Factor" code that is a subset of the code disclosed in Figure 2 of the '783 patent, which the patent admits is well-known prior art.  *Compare* D.I. 1, Ex. 2 at 9, 33 *with* '783 patent Fig. 2, 8:5-46.  Nitetek's allegations in this action thus confirm the

4

'783 patent claims only the abstract idea of "use a bigger number": by its own statements, any and all CMDA transmissions, even where they comprise only well-known CDMA components, fall within the asserted claims as long as they use a bigger number. *See generally* D.I., Ex. 2.

## ARGUMENT

I. **The Claims of the '783 Patent Are Not Patentable Subject Matter**

   A. **The '783 Patent Claims Fail The First Prong of The *Alice* Test Because They Are Directed To An Abstract Idea**

Although "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof" is patentable subject matter, "[l]aws of nature, natural phenomena, and abstract ideas are not patentable." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1285 (Fed. Cir. 2018) (citing 35 U.S.C. § 101). These are "'the basic tools of scientific and technological work that lie beyond the domain of patent protection.'" *TrackTime, LLC v. Amazon.com, Inc.*, No. 18-1518, 2019 WL 2524779, at *1 (D. Del. June 19, 2019) (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 77-78 (2012)). Courts follow a two-step "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts," *Sandbox Software, LLC v. 18Birdies, LLC*, No. 18-1649, 2019 WL 2524780, at *2 (D. Del. June 19, 2019), often called the *Alice* test after *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014).

The first step of the *Alice* test asks whether the claims' "character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). To answer this question, courts consider "what the patent asserts to be the focus of the claimed advance over the prior art." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020). The Federal Circuit has consistently held that patents fail the first prong of the *Alice* test if they are not related to "'a specific means or method that improves the relevant

technology,'" but are rather "'directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery.'" *Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (quoting *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)).

The '783 patent fails the first prong of the *Alice* test. It claims nothing more than the abstract concept of using a bigger number when a smaller one will not do. *See supra* § A. The specification acknowledges that each element of the claims—"spreading code," "hierarchic orthogonal type spreading code," and so forth—were not merely well known, but standard components of any CDMA transmission. *See supra* § A.1. Thus, "what the patent asserts to be the focus of the claimed advance over the prior art," *TecSec*, 978 F.3d at 1292, is merely the concept of using a bigger number instead of a smaller one. The claims call this bigger number a "spreading code[] of a longer length," *see e.g.*, '783 patent at 9:29-30, but the specification confirms that each "spreading code" is a sequence of ones and zeros, *id.* at Fig. 2, 4:32-33, and a longer sequence of ones and zeroes is another way of saying 'a bigger number.' The patent claims nothing more; to the contrary, the claims seek to include all CDMA transmissions using a bigger number, that is, "simply a generic environment in which to carry out the abstract idea." *Yu v. Apple Inc.*, 1 F.4th 1040, 1043 (Fed. Cir. 2021). Claim 3 recites any "spreading code selection method, which selects"—without specifying how—a code with a "longer length" ('783 patent at 9:26-32), while claim 4 does the same for "a base station apparatus." *Id.* at 9:33-47. Just as in *Yu*, "[o]nly conventional [CDMA] components are recited to effectuate the resulting" lengthened code. 1 F.4th at 1043. And, just as in *Yu*, the specification contains some (sparse) additional detail, but "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract

idea underlying the claims." *Id.* at 1044 (quoting *ChargePoint, Inc. v. Sema-Connect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019). That is true here. The '783 patent fails the first prong of the *Alice* test.

      **B.    The '783 Patent Claims Fail The Second Prong of the Alice Test Because They Add Nothing Inventive To the Abstract Idea**

In the second step of the *Alice* test, after "the Court finds that the claims at issue are directed a patent-ineligible concept, the Court must then, at step two, search for an 'inventive concept' – *i.e.*, 'an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *TrackTime*, 2019 WL 2524779, at *2 (alteration in original) (quoting *Alice*, 573 U.S. at 217-218). "[I]n searching for an inventive concept, the Court looks at the claim elements and their combination to determine if they transform the ineligible concept into something 'significantly more.'" *Sandbox Software*, 2019 WL 2524780, at *2 (quoting Alice, 573 U.S. at 217-218). The inventive concept must be "evident in the claims," *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017), and must "involve more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *TrackTime*, 2019 WL 2524779, at *2 (alteration in original) (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1367 (Fed. Cir. 2018)). The patent "must identify 'how' that functional result is achieved by limiting the claim scope to structures specified at some level of concreteness, in the case of a product claim, or to concrete action, in the case of a method claim." *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1302 (Fed. Cir. 2020). Claims that "recite the concept, but not the way to implement it," are ineligible for patenting. *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 740 (D. Del. 2018). Claims "recited at a high level of generality and merely

7

invok[ing] well-understood, routine, conventional components to apply the abstract idea" fail this requirement. *Yu,* 1 F.4th at 1045.

Again, the '783 patent fails this test. It adds nothing to the ineligible concept of 'use a bigger number,' and certainly does not add an "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *TrackTime*, 2019 WL 2524779, at *2 (alteration in original) (quoting *Alice*, 573 U.S. at 217-218). Instead, the claims are "recited at a high level of generality and merely invoke well-understood, routine, conventional components to apply the abstract idea." *Yu,* 1 F.4th at 1045 (Fed. Cir. 2021). The claims contain only "generic descriptions of computer components and functions that do not turn an abstract idea into a patentable invention." *B# on Demand LLC v. Spotify Tech. S.A.*, 484 F. Supp. 3d 188, 198 (D. Del. 2020) (citing *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014)). As a result, "any purported benefits" of the claims are not "improvements in computer functionality, but "benefits that flow from performing an abstract idea in conjunction with a well-known" set of components of CDMA transmissions. *Uniloc 2017 LLC v. Netflix, Inc.*, No. 18-2055, 2019 WL 3291581, at *5 (C.D. Cal. May 14, 2019) (quoting *BSG Tech LLC*, 899 F.3d at 1288). Thus, neither claim 3 nor claim 4 contains an inventive concept "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *TrackTime*, 2019 WL 2524779, at *2 (alteration in original) (quoting *Alice*, 573 U.S. at 217-218).

## II.     All Claims of the '783 Patent Fail the *Alice* Test

"The Federal Circuit has held that the district court is not required to individually address claims not asserted or identified by the non-moving party, so long as the court identifies a

8

representative claim and 'all the claims are substantially similar and linked to the same abstract idea.'" *Novo Transforma Techs., LLC v. Sprint Spectrum L.P.*, No. 14-612, 2015 WL 5156526, at *2 (D. Del. Sept. 2, 2015), *aff'd*, 669 F. App'x 555 (Fed. Cir. 2016) (quoting *Content Extraction*, 776 F.3d at 1348); *see Alice*, 573 U.S. at 225-227 (finding a single claim "representative" of all claims across four patents); *see also, e.g.*, *TrackTime*, 2019 WL 2524779, at *3.

The '783 patent easily meets this test, as its other claims "are substantially similar and linked to the same abstract idea." *Novo Transforma*, 2015 WL 5156526, at *2. Claims 3 and 4 both suggest longer spreading codes—that is, bigger numbers—in asymmetric communications, which, again, the specification confirms were well-known in the art. '783 patent at 3:48-52. The remaining claims follow suit, adding nothing beyond well-known components of CDMA transmission. *Id.* at 9:1 to 10:59. Claims 3 and 4 "and the others are substantially similar and linked to the same abstract idea." *TrackTime*, 2019 WL 2524779, at *3.

### III.  This Court Can And Should Resolve This Motion at the Pleading Stage

The Court can and should dismiss Nitetek's claims immediately. Although, "[i]n ruling on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff," *Sandbox Software*, 2019 WL 2524780, at *1 (citing *Mayer v. Belichick*, 605 F.3d 223, 229 (3d Cir. 2010)), it "need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit,' such as the claims and the patent specification." *Sandbox Software*, 2019 WL 2524780, at *1 (quoting *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017)). "[P]atent eligibility can be determined at the Rule 12(b)(6) stage . . . when there are no factual allegations that, taken as true,

9

prevent resolving the eligibility question as a matter of law." *Sandbox Software*, 2019 WL 2524780, at *1 (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1125 (Fed. Cir. 2018)).

No factual allegations can save the '738 patent. Its specification and claims, which Nitetek attached to the complaint and which are, in any event, "properly subject to judicial notice," confirm that the patent claims only ineligible subject matter. *Sandbox Software*, 2019 WL 2524780, at *1 (quoting *Secured Mail Sols.*, 873 F.3d at 913); *see supra* §§ I, II. Under these circumstances, this Court has dismissed claims for lack of patentable subject matter on a motion to dismiss. *See, e.g.*, *Fast 101 PTY Ltd. v. Citigroup Inc.*, 424 F. Supp. 3d 385, 389 (D. Del. 2020), *aff'd*, 834 F. App'x 591 (Fed. Cir. 2020); *IPA Techs., Inc. v. Amazon.com, Inc.*, 352 F. Supp. 3d 335, 343 (D. Del. 2019); *Inventor Holdings, LLC v. Gameloft, Inc.*, 135 F. Supp. 3d 239, 245 (D. Del. 2015); *Zyrcuits IP LLC v. Acuity Brands, Inc.*, No. 20-1306, 2021 WL 3287801, at *6 (D. Del. Aug. 2, 2021); *TrackTime*, 2019 WL 2524779, at *1; *Sandbox Software*, 2019 WL 2524780, at *1; *TriPlay, Inc. v. WhatsApp Inc.*, No. 13-1703, 2018 WL 1479027, at *6 (D. Del. Mar. 27, 2018).

## IV. The Court Should Not Grant Leave to Amend the Complaint

Although "leave to amend 'shall be freely given when justice so requires,'" courts do not waste time doing so when "amendment would be futile." *Friedman v. Transamerica Corp.*, 5 F.R.D. 115, 116 (D. Del. 1946) (quoting Fed. R. Civ. P. 15); *see, e.g., Pivital IP LLC v. ActiveCampaign, LLC*, No. 19-1590, 2020 WL 6043919, at *4 (D. Del. Oct. 13, 2020); *Pebble Tide LLC v. Arlo Techs.*, No. 18-1767, 2020 WL 509183, at *4 (D. Del. Jan. 31, 2020); *Natera, Inc. v. ArcherDX, Inc.*, No. 20-125, 2020 WL 6043929, at *10 (D. Del. Oct. 13, 2020). Here, because the Court can "resolv[e] the eligibility question as a matter of law," no reasonable

amendment could cure the deficiencies in the '783 patent and thus in the complaint. *TrackTime*, 2019 WL 2524779, at *1 (quoting *Aatrix Software*, 882 F.3d at 1125). The Court should therefore deny any request for leave to amend the complaint.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Nitetek's Complaint with prejudice.

|  |  |
|---|---|
| OF COUNSEL:<br>Matthew S. Warren<br>Jennifer A. Kash<br>WARREN LEX LLP<br>2261 Market Street No. 606<br>San Francisco CA 94114<br>(415) 895-2940<br>21-790@cases.warrenlex.com<br><br>Dated: August 23, 2021 | */s/ Andrew E. Russell*<br>Karen E. Keller (No. 4489)<br>Andrew E. Russell (No. 5382)<br>SHAW KELLER LLP<br>I.M. Pei Building<br>1105 North Market Street, 12th Floor<br>Wilmington, DE 19801<br>(302) 298-0700<br>kkeller@shawkeller.com<br>arussell@shawkeller.com<br>*Attorneys for Defendant* |

11